[Civ. No. 2536.    Fourth Appellate District.—February 17, 1941.]

FRANK BELMONT, Appellant, v. E. F. MILTON, Respond-
ent.

Henry O. Wackerbarth for Appellant.

LeRoy G. Smith for Respondent.

KLETTE, J., *pro tem.*—This is an action by Frank Belmont, plaintiff and appellant, against E. F. Milton, defendant and respondent, for advances made, and for damages, under a contract, labeled "Citrus Marketing Agreement". The following are the essential parts of said contract, necessary for our consideration here:

"This agreement, made this 17 day of August, 1936, and ending the 17 day of August, 1937, between Frank Belmont hereinafter called the consignee, and E. F. Milton of Dinuba, Calif. hereinafter called the owner.

"Witnesseth: That the Owner, in consideration of one dollar and the promises herein on the part of the Consignee, employs said Consignee to pick, haul, pack, ship and market *Oranges* now growing on his land and that during the term of this agreement may be grown upon his land and premises consisting of 55 acres . . . The undersigned represents and guarantees to the Consignee . . . that there is no encumbrance, lien or adverse claim of any kind upon or against said crops or any part thereof except whatever Frank Belmont *advance*.

"The Consignee accepts said employment and agrees to pick, haul, pack, ship and market *all or part* of said crop or crops in such manner, at such time or place as will in his judgment yield the maximum returns therefor, . . .

"The Consignee is given full power and authority to enter the said acreage at any time to pick the said fruit and to sell, or offer for sale, or contract for the sale of *any or all* of the said fruit belonging to the Owner, and either before or after delivery to make collection therefor, in his own name or otherwise; . . . provided, however, that the said Consignee will make a full and complete accounting to the Owner of all financial transactions with regard to the respective fruit.

"Before payment of his net proceeds is made to the owner the Consignee may first deduct therefrom the actual cost of picking and hauling the said fruit.

"A flat charge of $.65 per packed box will be made for packing oranges, *$.65 per packed box for grapefruit*; . . .

"That the Consignee will pack, load, ship and market said fruit in such manner, at such time and place, and upon such terms and conditions, subject to the provisions hereof, . . . as will in his judgment yield the maximum return therefor, and will pay to the undersigned the total amount received from sale of said fruit, after deducting therefrom an amount equal to the total sum paid or advanced hereunder, . . .

"In consideration of the promises contained herein the Owner agrees that if he should at any time dispose of any merchantable fruit above agreed to be shipped through the Consignee during the life of this contract, he shall and will pay to the Consignee, as liquidated damages for such breach, the sum of fifteen cents (15 cts) for each and every commercial package or box, known in the trade as 'field box', or the equivalent thereof, which may be so disposed of, sold, marketed or consigned by said Owner, it being specifically agreed that it is impracticable and extremely difficult to fix the actual damage which would thereby be suffered by the Consignee.

"Should the net return from sales of fruit during the life of this agreement fail to equal the total amounts advanced by the Consignee hereunder including all payments on owner's account other than guarantees, then this contract shall be *binding* upon both parties until such advances and payments have been fully paid . . .

"The said Consignee hereby guarantees a minimum net return of $ cost per . . . box to the said Owner." (Italics ours.)

The complaint is in three counts, the first seeking recovery of the difference between the advances made, expenses incurred, with interest, and the returns from the sale of the crops, including certain grapefruit, which was shipped and sold. The second count seeks recovery of 15 cents per box, under the liquidated damage clause of the contract, for 4,000 boxes of oranges sold by respondent, from the crop of 1937–1938, under the theory that the contract remained in force, and covered the future crops, until all advances and expenses had been fully paid. The third count is for damages, in the amount of the profit, which it is alleged appellant would have made, on the 4,000 boxes of oranges of the 1937–1938 crop, had they been delivered to him.

An amended answer and cross-complaint was filed by respondent, which admitted appellant had made advances to respondent in the sum of $2,412.80, and alleged that the contract was void for want of consideration and mutuality, and that the contract was breached by appellant, because of his failing to pick 4,000 boxes of oranges growing in said orchard, which on January 7, 1937, were frozen, asking damages therefor.

The court found for appellant in the sum of $1,038.44, under the first count in the complaint, denied him interest, and found against him under the second and third counts. It also found for respondent under the cross-complaint, in the sum of $200, the same to be offset against appellant's judgment, leaving the same at $838.44. Judgment was entered accordingly.

From this judgment plaintiff and appellant has taken this appeal.

■ Many specifications of the insufficiency of the evidence to support the findings are set forth by appellant. We believe the evidence sufficient to support all of the findings referring to the first cause of action. The finding of the trial court, that appellant could not recover for the losses sustained on the grapefruit shipments, is correct. The contract contemplated the shipping of grapefruit, for it provided for a charge of $.65 per box for packing grapefruit, and the conversations as to the shipping of the grapefruit, do not indicate any arrangement different than provided by the contract. The provisions of the contract that, ''The said consignee hereby guarantees a minimum net return of $ cost per box to the owner,'' was explained by appellant as meaning that the owner would not receive red ink, and the court properly held that this applied to each of the several sales, and not to the season's average sales. We believe that the judgment in favor of appellant, in the sum of $1,038.44 under the first cause of action in the complaint, is supported by the evidence and the findings, and should be sustained.

For the reasons hereafter set forth, in dealing with the second and third causes of action, we hold that the contract was not breached by appellant failing to pick all of the oranges of the 1936–1937 crop, before frozen. Therefore, there can be no recovery by respondent, of the $200 damages allowed under the cross-complaint, for the 400 boxes of

oranges found to be remaining on the trees when the freeze came.

While we agree with the conclusions of law, and the judgment of the court, denying appellant relief under the second and third causes of action set forth in his complaint, we cannot agree with the findings under which these conclusions and judgment were reached. We arrive at the same conclusion, but for different reasons. The court found that appellant breached the contract by failing to pick and market the 400 boxes of oranges remaining on respondent's trees, after December 5, 1936, and which were frozen January 7, 1937. With this finding we do not agree. The contract did not require appellant to pick and market *all* of the oranges growing on said premises. The contract says, that the owner "employs said consignee to pick . . . and market oranges now growing on his land". It does not say "all oranges." Again it says, that the consignee accepts said employment, "and agrees to pick . . . and market *all or part* of said crop or crops in such manner, at such time or place as will in his judgment yield the maximum return therefor," and, that consignee is given full power and authority to enter the property, and pick and sell *"any or all"* of said fruit. Under these provisions of the contract, appellant not only was not required to pick and sell all of the crop, but was given a discretion as to the time he might pick and sell the part he did pick. We therefore conclude that he did not breach the contract in this particular.

The second and third causes of action are based upon the claim that the contract was extended to include the crops for the season of 1937–1938, under the provisions of the contract, that it would be *"binding"* upon both parties until the advances and payments had been fully paid. We do not construe this as meaning that the contract was extended to include the crops of the following year. The contract covered the year from August 17, 1936, to August 17, 1937. At no place does it say that it shall be extended to include the crops of the following year, but merely says that it will be "binding" upon the parties until the advances are paid. To hold that the word "binding" would extend the contract indefinitely, to include future crops, would be doing violence to the rule of law, that in construing an instrument, the office of the judge is, "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what

has been omitted, or to omit what has been inserted." (Code Civ. Proc., sec. 1858.) To construe the word "binding", as extending the contract, as claimed by appellant, would have the effect of the court making a new and different contract for the parties, which of course cannot be done. (*Wells* v. *Union Oil Co.*, 25 Cal. App. (2d) 165 [76 Pac. (2d) 696]; *Grey* v. *Tubbs*, 43 Cal. 359; *Greene* v. *Vargas*, 7 Cal. App. (2d) 127 [45 Pac. (2d) 347]; *Hill* v. *General Petroleum Corp.*, 128 Cal. App. 284 [16 Pac. (2d) 1035].)

We therefore conclude that appellant cannot recover under the second and third causes of action, which seek recovery of liquidated and special damages, respectively, for the 1937–1938 crop, for the reason that they were not covered by the contract.

■ The court should have allowed interest on the advances made by appellant to respondent. We can only construe these advances as a loan, which, under the provisions of section 1914 of the Civil Code, bears interest. All of these advances, excepting $500, were made between August 17, 1936, the date of the contract, and November 30, 1936. On November 30, 1936, the first returns from the sale of oranges, were received and credited by appellant. The contract was not one of sale, but of consignment. Nor was appellant a *del credere* factor. Therefore there was no money due respondent from appellant, until the first returns were received from the sale of oranges, and any advances made, were in the nature of a loan, and in the absence of an agreement to the contrary, would bear legal interest. A factor, who is not a *del credere* factor, is entitled to interest on advances made. (25 Cor. Jur., p. 384, sec. 83; *Imperial Valley etc. Assn.* v. *Davidson*, 58 Cal. App. 551 [209 Pac. 58].)

■ This, however, does not call for a reversal of the entire judgment. (*Smith* v. *Sharp*, 70 Cal. App. 336 [233 Pac. 374].) The judgment is modified by striking therefrom the item of $200 allowed respondent under the cross-complaint, leaving the judgment in favor of appellant stand in the amount of $1,038.44, and costs in the trial court, and as so modified the judgment is affirmed as to all matters except interest on advances made by appellant. As to this portion of the judgment, it is reversed and a new trial is ordered, with instructions to proceed to ascertain the amount of interest due appellant on the advances made by him to respondent, and add said sum to the $1,038.44 which plaintiff is entitled

126

to recover, and to enter judgment in favor of plaintiff for the total amount of principal and interest found due him. Each party to pay his own costs on appeal.

Barnard, P. J., and Marks, J., concurred.